IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE BARNHOUSE, | : | |
| | : | Case No. 2:17-cv-879 |
| **Plaintiff,** | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Vascura |
| MEGAN J. BRENNAN, | : | |
| in her official capacity as | : | |
| Postmaster General, | : | |
| | : | |
| **Defendant.** | : | |

**OPINION AND ORDER**

This matter is before the Court on Defendant's partial Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Defendant's partial Motion for Summary Judgment, in the alternative, under Federal Rule of Civil Procedure 56. (ECF No. 14). For the following reasons, Defendant's Motion to Dismiss is **GRANTED in part**. Plaintiff's Counts II and IV are **DISMISSED** for lack of subject matter jurisdiction. Plaintiff's Count V is **DISMISSED without prejudice** for lack of subject matter jurisdiction. Defendant's Motion to Dismiss certain claims under Counts I and III for failure to state a claim is **DENIED**. Defendant's Motion for Summary Judgment is **MOOT**. (ECF No. 14).

I.  BACKGROUND

A.  Factual Background

Plaintiff, Stephanie Barnhouse, is an employee of the United States Postal Service ("USPS") at the Post Office in New Concord, Ohio. (ECF No. 1 at ¶ 8). Plaintiff is under the supervision of the New Concord Postmaster, Janis Spillman. (ECF No. 1 at ¶ 8). Plaintiff asserts that in the "summer of 2014," she applied "for but was not selected for Job No. 95196364, a full-

1

time carrier position, and a less experienced and less senior male was awarded the position, all as a result of sex discrimination." (ECF No. 1 at ¶ 9). Her non-selection, according to Plaintiff, was the result of Postmaster Spillman's failure and/or refusal "to properly document Plaintiff's earned rating/ranking as [a Rural Carrier Associate] (a test which she took and passed) until after Plaintiff was denied the position." (ECF No. 1 at ¶ 10). Plaintiff alleges that, because of Postmaster Spillman's actions, she filed both internal complaints and a complaint with the EEO asserting sex discrimination. (ECF No. 1 at ¶ 11).

Plaintiff claimed that Postmaster Spillman began to retaliate against her, following the filing of her EEO complaint. (ECF No. 1 at ¶ 12). Plaintiff asserted, for example, that Postmaster Spillman "refused to place Plaintiff as the priority or seniority substitute carrier on the substitute list even though she was entitled to such ranking," and that Postmaster Spillman "retaliated by borrowing substitutes from other locations rather than permitting Plaintiff to serve as a substitute, resulting in loss of work and loss of income." (ECF No. 1 at ¶¶ 12-13). Plaintiff further asserted that Postmaster Spillman "retaliated by refusing to permit Plaintiff to return to work" on September 2, 2014 following her approved Family Medical Leave Act ("FMLA") leave, retaliated by "attempting to remove Plaintiff from her position permanently, and retaliated by initiating disciplinary actions on purported misconduct. (ECF No. 1 at ¶¶ 14-16). Finally, according to Plaintiff, following her "numerous union grievances about the hostile work environment, sex discrimination and/or retaliatory conduct," she was followed, her personal mail was "opened and/or damaged or not delivered at all," and she was subject to internal discipline for supposed misconduct, all at the direction of Postmaster Spillman. (ECF No. 1 at ¶ 17).

## B. Procedural Background

Plaintiff first initiated contact with the Equal Employment Opportunity Commission ("EEOC") on July 29, 2014 and filed her first "informal complaint" with the USPS on August 6, 2014. (ECF No. 14, Ex. A). In this complaint, Plaintiff alleged that she was unable to bid on a rural carrier job position and it was ultimately awarded to Kevin Gregg, another carrier. (ECF No. 14, Ex. A). Plaintiff filed a second informal EEO complaint with the USPS on September 3, 2013, alleging that, on August 13 and 14, 2014, Plaintiff was scheduled to work, while another carrier, Bob Robsen, was not. (ECF No. 14, Ex. 2). Plaintiff filed a third informal EEO complaint on September 12, 2014, alleging that she was not permitted to return to work after her approved FMLA leave ended. (ECF No. 14, Ex. 3). USPS notified Plaintiff on October 17, 2014 that her pre-complaint processing was complete, and she could proceed with a formal complaint. (ECF No. 14, Ex. 4). Plaintiff filed her formal EEO complaint with the National EEO Investigative Services Office (NEEOISO) on October 25, 2014. (ECF No. 14, Ex. 5). Additionally, Plaintiff filed a fourth informal EEOC complaint with USPS on October 25, 2014, alleging that Postmaster Spillman directed a mail carrier to not deliver Plaintiff's personal mail. (ECF No. 14, Ex. 6).

On November 17, 2014, Plaintiff was informed by USPS that her formal EEO complaint was accepted for investigation regarding her claims of sex discrimination and retaliation with respect to two charges: "(1) Between June 25, 2014 and July 4, 2014, you attempted to bid online for position No. 95196364 and you were not selected; and (2) On September 2, 2014, you were not allowed to return to work." (ECF No. 14, Ex. 7). At the same time, USPS informed Plaintiff that her claim that "[o]n October 3, 4, 2014, your postmaster told Rt. #3 Carrier not to deliver your certified mail to you" was dismissed. (ECF No. 14, Ex. 7). Plaintiff filed a request to amend

her formal EEO complaint on December 16, 2014 to include a new claim concerning the notice of removal she received on November 11, 2014. (ECF No. 14, Ex. 8). USPS accepted Plaintiff's notice to amend and included this claim in its investigation. (ECF No. 14, Ex. 9).

USPS concluded its investigation and sent a copy of its Investigative Report to Plaintiff on March 19, 2015. (ECF No. 14, Ex. 11). USPS informed Plaintiff that she could request a hearing before an administrative judge or that she could request a final agency decision without a hearing. (ECF No. 14, Ex. 11). Plaintiff requested a hearing before an EEOC administrative judge. (ECF No. 14, Ex. 11).

The administrative judge issued a Scheduling Order on October 11, 2016. (ECF No. 14, Ex. 3). However, Plaintiff withdrew her request for a hearing before the EEOC. (ECF No. 14, Ex. B). The EEOC thus dismissed her complaint as withdrawn on July 7, 2017. (ECF No. 14, Ex. B). USPS issued a Notice of Final Action and informed Plaintiff that she could file civil suit in federal court within 90 days. (ECF No. 14, Ex. 6). Plaintiff timely filed this suit.

## II.  STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

When subject matter jurisdiction is challenged pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff has the burden of proving jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)). Federal Rule of Civil Procedure 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties: (1) a facial attack on subject matter jurisdiction; and (2) a factual attack on subject matter jurisdiction. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (identifying the two types of 12(b)(1) motions to dismiss). Facial attacks on subject matter jurisdiction "merely

question the sufficiency of the pleading." *Id*. A facial attack on subject matter jurisdiction is reviewed under the same standard as a 12(b)(6) motion to dismiss. *Id*. In a factual attack on subject matter jurisdiction, a court "must . . . weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id*. *See also Nat'l Assoc. of Minority Contractors v. Martinez*, 248 F. Supp.2d 679, 681 (S.D. Ohio 2002).

### B. Federal Rule of Civil Procedure 12(b)(6)

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). The Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman,* 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### C. Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the

movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### III. ANALYSIS

#### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### 1. Counts II and IV: State Law Claims of Sex Discrimination and Retaliation

Defendant moves to dismiss Plaintiff's state law claims of sex discrimination and retaliation for lack of subject matter jurisdiction. (ECF No. 14). For claims of discrimination in federal employment, Title VII of the Civil Rights Act of 1964 (Title VII), as amended, provides the exclusive judicial remedy. 42 U.S.C. § 2000e-16; *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976); *James v. Rumsfeld*, 580 F.2d 224, 225-26 (6th Cir. 1978). Both Count II of the Complaint, a "State Law Claim of Sex Discrimination," and Count IV, a "State Law Claim of Retaliation" are brought under Ohio Revised Code §4112.02. Plaintiff concedes that Title VII provides the sole remedy for sex discrimination and retaliation claims against the government and withdraws both claims in her response. (ECF No. 15 at 6). Because Plaintiff cannot maintain

claims for sex discrimination and retaliation under Ohio Revised Code § 4112.02 due to the exclusivity of Title VII, Counts II and IV are **DISMISSED** under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

### 2. Count V: Intentional Infliction of Emotional Distress

Defendant moves to dismiss Plaintiff's state law claim for intentional infliction of emotional distress for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 14). Title VII provides the exclusive remedy for federal employees' claims of discrimination. *Brown*, 425 U.S. at 835. However, "[i]n interpreting *Brown*, a number of courts have distinguished between discrimination claims and other claims which, although arising out of the same facts and circumstances, seek to remedy injuries other than workplace discrimination." *Wallace v. Henderson*, 138 F. Supp. 2d 980, 984 (S.D. Ohio 2000). To the extent that a state law claim of intentional infliction of emotional distress is identical to a plaintiff's claim of discrimination under Title VII, a plaintiff must proceed under Title VII and adhere to its administrative requirements and limitations on damages. *Baird v. Haith*, 724 F. Supp. 367, 375 (D. Md. 1988). However, if a plaintiff alleges a claim separate from discrimination, although each cause of action arose from the same set of facts, the *Brown* holding does not necessitate preemption by Title VII. *Id.* Preemption by Title VII, then, turns not on whether the state claim arises from the same set of facts as the Title VII claim, but whether the two claims can be separated. *See id.*

First, Defendant argues that Count V should be dismissed because Plaintiff failed to establish that the facts supporting her state law intentional infliction of emotional distress claim are separate from her Title VII claims and thus, her state claim is preempted by Title VII. (ECF

No. 14 at 16-17). Second, Defendant argues that Plaintiff failed to name her supervisor individually as a defendant in her complaint. (ECF No. 14 at 16-17).

    a. *Whether Plaintiff's intentional infliction of emotional distress claim is separate from her Title VII discrimination and retaliation claims*

Defendant asserts that the same set of facts exist for Plaintiff's state law intentional infliction of emotional distress claim as her Title VII claims of discrimination and retaliation, and is therefore preempted by Title VII. (ECF No. 14 at 15-17). As this Court noted in *Wallace*, whether a "claim for intentional infliction of emotional distress" is separate from discrimination, and thus not precluded by Title VII, is a "difficult question." *Wallace*, 138 F. Supp. 2d at 984. Indeed, the courts of appeals have come to differing conclusions regarding the preclusive reach of Title VII. *Heimberger v. Pritzker*, No. 2:12-CV-01064, 2014 WL 1050341, at *9 (S.D. Ohio Mar. 17, 2014) (*comparing Brock v. United States*, 64 F.3d 1421, 1423 (9th Cir. 1995) ("Title VII is not the exclusive remedy for federal employees who suffer 'highly personal' wrongs . . . When the harms suffered involve something more than discrimination, the victim can bring a separate claim.") *with Pfau v. Reed*, 125 F.3d 927, 932-34 (5th Cir. 1997) (state law intentional infliction of emotional distress claims against federal employer preempted by Title VII)).

Because the Sixth Circuit has not decisively ruled on whether state intentional infliction of emotional distress claims are necessarily preempted by Title VII, this Court has used the "highly personal injury" standard of the Ninth Circuit. *Wallace*, 138 F. Supp. 2d at 986. In *Wallace*, the postal employee plaintiff was subject to constant harassment and stalking, which served as the basis for his claim of retaliation under Title VII and Ohio state law, as well as a state law claim for intentional infliction of emotional distress. *Id.* at 981-82. This Court determined that the plaintiff's intentional infliction of emotional distress claim was not necessarily precluded by Title VII, but "to the extent that his intentional infliction of emotional

8

distress claim seeks redress for a 'highly personal injury,' beyond discrimination or retaliation, which was caused by [the defendant's] behavior, his claim remain[ed]." *Id.* at 986. According to this Court, the plaintiff's claim of emotional distress was the result of "particular threats and conduct" that went beyond enduring workplace retaliation. *Id.* Therefore, the plaintiff's intentional infliction of emotional distress claim alleged a "highly personal injury" beyond retaliation. *Id.*

On the other hand, state law intentional infliction of emotional distress claims based on a supervisor's pursuit of workplace disciplinary measures fall in the realm of Title VII's anti-retaliation provision. *See Marotta v. Ford Motor Co.*, 119 F. Supp. 3d 676, 696-97 (E.D. Mich. 2015); 42 U.S.C. § 2000e-3. In *Marotta*, the plaintiff brought gender discrimination and retaliation claims against her employer, which included claims of retaliation based on allegedly pre-textual disciplinary measures. *Id.* at 683-87. The court analyzed these claims under Title VII's framework for retaliation, requiring a plaintiff to establish a prima facie case with four elements: "(1) the plaintiff engaged in protected activity; (2) the employer knew about the plaintiff engaging in protected activity; (3) the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action." *Id.* at 696. Therefore, claims of pre-textual disciplinary measures do not go beyond the discipline or retaliation addressed by Title VII, but rather are within Title VII's reach. *See id.* at 696-97.

In this case, Plaintiff bases her state law intentional infliction of emotional distress claim on the "extreme emotional distress and mental anguish" she allegedly suffered due to her supervisor's conduct. (ECF No. 1 at ¶ 35). Specifically, Plaintiff alleges that, at the direction of

9

her supervisor, Plaintiff was followed; her personal mail was opened, damaged, or not delivered; and she was reported to internal affairs for purported misconduct. (ECF No. 1 at ¶¶ 17, 35).

As for Plaintiff's allegation that her supervisor had her followed and had Plaintiff's personal mail opened, damaged, or not delivered, Defendant argues that this conduct arose from the same set of facts establishing Plaintiff's Title VII claim and the claim is therefore precluded. (ECF No. 14 at 16-17). As this Court found "constant harassment and stalking" to go beyond enduring workplace retaliation in *Wallace*, so too here. Plaintiff's claims of emotional distress are based on facts that are separate from workplace discrimination. Indeed, if true, claims of following and interference with Plaintiff's personal mail could be considered to go beyond the workplace. Still, Plaintiff's claims need to constitute a highly personal injury. Defendant does not argue that Plaintiff's claims fail to establish a highly personal injury, (ECF No. 14 at 16-17) and drawing all inferences in favor of Plaintiff, as the Court is required to do, Plaintiff's claim is therefore not deficient in this regard.

However, with respect to Plaintiff's assertion that Plaintiff's supervisor reported her to internal affairs for purported misconduct, this type of retaliation in the workplace is preempted and considered by Title VII. (ECF No. 1 at 7). As in *Marotta*, workplace disciplinary measures do arise out of workplace discipline and retaliation, and these claims are evaluated under Title VII's four-part framework. It does not go beyond workplace retaliation or constitute a "highly personal violation," as considered in *Wallace*, but certainly takes place in the workplace. As a result, these claims cannot be separated to avoid preemption by Title VII. Plaintiff asserts that her supervisor reported her to internal affairs based on purported misconduct. (ECF No. 1 at 7). This conduct took place in the workplace and arose out of the same set of facts as her Title VII

claims and is thus preempted. Therefore, in this regard, Plaintiff's claim for state law intentional infliction of emotional distress is insufficient.

      b. *Whether Plaintiff named the appropriate defendant*

Defendant argues that, because Plaintiff named the Postmaster General as the defendant, instead of individually naming her supervisor, her state law claims for intentional infliction of emotional distress fail. (ECF No. 14 at 16-17). The Postal Service is an institution within the executive branch of the United States Government and thus, "enjoys federal sovereign immunity absent a waiver." *Dolan v. U.S. Postal Service*, 546 U.S. 481, 483-84 (2006); 39 U.S.C. § 101. However, Congress may abrogate sovereign immunity and has done so in a number of instances. *VIBO Corp., Inc. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012). Specifically, and relevant here, Congress has waived the Postal Service's sovereign immunity under Title VII of the Civil Rights Act of 1964 and Federal Tort Claims Act (FTCA). 42 U.S.C. § 2000e; 28 U.S.C. § 1346(b)(1). Still, in order to bring a cause of action under either statute, a plaintiff must comply with the procedures set forth in the statute. *Baird*, 724 F. Supp. at 374.

Congress abrogated a federal employer's sovereign immunity under Title VII and created a comprehensive remedial system, but it did not expressly authorize a plaintiff to bring a state law claim against her federal employer. *See* 42 U.S.C. 2000e; *Brown*, 425 U.S. at 835. Therefore, Plaintiff's state law intentional infliction of emotional distress claim against the Postmaster General fails under Title VII.

Most courts also hold that Title VII prevents federal employees from recovering from their supervisors as individuals for causes of action arising from employment discrimination. *Baird*, 724 F. Supp. at 378. However, for causes of action that seek redress for a "highly personal injury" outside the scope of discrimination and retaliation under Title VII, a plaintiff can bring a

11

claim against an individual supervisor. *Wallace*, 138 F. Supp.2d at 986. Thus, to the extent that Plaintiff seeks to assert a state law intentional infliction of emotional distress claim, Plaintiff can name an individual defendant other than her federal employer, such as her supervisor, and avoid preemption under Title VII.

Alternatively, state law intentional infliction of emotional distress claims can be brought against the United States proper. Federal Torts Claims Act, 28 U.S.C. § 2671. Under the FTCA, Congress waived immunity from liability for certain torts against the United States, including intentional infliction of emotional distress. *Id.* Because the state of Ohio recognizes the tort of intentional infliction of emotional distress, *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 374 (1983), a claim could proceed when the tort occurs within the state. 28 U.S.C. § 1346(b). However, waivers of sovereign immunity are construed strictly, and the procedural aspects of the FTCA must be observed. *Baird*, 724 F. Supp. at 374. First, a plaintiff must exhaust administrative remedies under the FTCA before bringing suit in a federal court. 28 U.S.C. § 2675(a). Second, the only proper defendant under the FTCA is the United States. 28 U.S.C. § 1346. In this case, although Plaintiff does not raise a claim under the FTCA, the claim would be insufficient for failing to exhaust administrative remedies under the FTCA and failing to name the United States as a party.

Therefore, Plaintiff's Count V is **DISMISSED without prejudice**. Plaintiff is instructed to request leave to amend her complaint pursuant to Federal Rule of Civil Procedure 15, if she desires to pursue this claim.

## B. Motion to Dismiss for Failure to State a Claim
### 1. Failure to Exhaust Administrative Remedies

Defendant asserts that, aside from the three claims accepted for investigation by the EEOC, Plaintiff failed to exhaust administrative remedies for the Title VII claims listed in her complaint and thus, these claims must be dismissed for failure to state a claim. (ECF No. 14 at 10). As a prerequisite to bringing a claim alleging discrimination and retaliation under Title VII, a plaintiff must first exhaust administrative remedies. *Brown*, 425 U.S. at 823-33. The EEOC "charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Golden v. Mirabile Investment Corp.*, 724 Fed. Appx. 441, 445 (6th Cir. 2018). In determining whether a claim was sufficiently included in a plaintiff's EEOC charge, courts "construe[] the EEOC complaint liberally, and 'consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id.* For example, even claims not sufficiently included may still be advanced, if upon investigation, the EEOC determines that the facts support a race discrimination charge and, in addition, an age discrimination charge. *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). This rule acknowledges that "charges are frequently filed by lay complainants, and the courts recognize that subsequent actions should not be restricted by the failure of a complainant to attach the correct legal conclusion to the EEOC claim, conform to procedural technicalities, or include 'the exact wording which might be required in a judicial proceeding.'" *Id.*

Here, Defendant argues that Plaintiff never exhausted her administrative remedies regarding her claims that she was "'reported to internal USPS authorities for conduct which never occurred,' that the Postmaster 'refused to place Plaintiff as the Priority or Seniority Substitute Carrier on the Substitute List even though she was entitled to such ranking,' that the

Postmaster borrowed 'substitutes from other locations rather than permitting Plaintiff to serve as a substitute, resulting in loss of work and loss of pay,' and that Plaintiff 'was otherwise disciplined on multiple occasions.'" (ECF No. 14 at 11-12). While Defendant asserts that Plaintiff was represented by counsel at the administrative phase, it is unclear from the complaint and Defendant's attached exhibits whether Plaintiff was represented while completing her informal complaints which detailed the specific incidents of discrimination and retaliation she alleged. (ECF No. 14 at 11). Therefore, liberally construing Plaintiff's EEOC charge, the specific charges included by Plaintiff in her complaint could reasonably be expected to grow out of her discrimination charge. Indeed, these allegations, which resemble retaliation, could follow an initial charge of discrimination. Thus, drawing all inferences in favor of Plaintiff, these claims are sufficient in this regard.

Defendant's motion to dismiss for Plaintiff's failure to exhaust administrative remedies is therefore **DENIED**.

### 2. Count III: Title VII Retaliation

Defendant argues that at least some of Plaintiff's retaliation claims included in Count III must be dismissed as untimely. (ECF No. 14 at 13). Federal courts only have subject matter jurisdiction to hear Title VII claims that a plaintiff has expressly filed in an EEOC charge or claims that "can reasonably be expected to grow out of the EEOC charge." *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998). Claims of retaliation that occur after the plaintiff has filed an EEOC charge are excepted from the filing requirement. *Id*. However, if the "retaliation claim relates to conduct occurring prior to the filing of the EEOC charge, the exception does not apply." *Longino v. City of Cincinnati*, No. 1:12-cv-424, 2013 WL 1412192, at *5 (S.D. Ohio Apr. 8, 2013).

Here, Defendant asserts that certain retaliation allegations included in Count III were never administratively exhausted, because they are "substantively similar" to claims Plaintiff made in 2015, which were not accepted by the EEOC for investigation and this denial was never challenged by Plaintiff. (ECF No. 14 at 13-14). Defendant provides as an example Plaintiff's 2015 allegation that "[the] postmaster has not posted a seniority list." (ECF No. 14 at 13). This allegation, according to Defendant, is "substantively similar" to Plaintiff's claims in Count III that "her name was not placed 'in the appropriate place on the substitute carrier list' and that she was not permitted 'to work as a substitute carrier.'" (ECF No. 14 at 13-14). However, there is a difference between alleging that a list was simply not posted and alleging that one's name is not appropriately placed on a list or that one is not permitted to work. Presumably, her supervisor's failure to post a seniority list would affect all individuals listed the same–none would have notice of where they specifically fall on the list. On the other hand, Plaintiff's allegation that her ranking was not appropriately recorded on the list affects her individually. Moreover, not allowing her to work as a substitute carrier would again affect her individually. Both allegations, if true, could constitute retaliation targeting Plaintiff.

Plaintiff's complaint does not specifically identify the dates the alleged retaliatory conduct took place, but to the extent that any of Plaintiff's allegations occurred after her EEOC charge was accepted, as amended, on December 16, 2014, these claims survive. However, to the extent that any retaliation allegations occurred prior, these claims are **DISMISSED** for lack of subject matter jurisdiction.

### C. Motion for Summary Judgment

Defendant, in addition to its partial motion to dismiss, moved for summary judgment under Federal Rule of Civil Procedure 56, in the alternative. (ECF No. 14). Subsequent to this

motion, on October 26, 2018, Defendant filed a second motion for summary judgment following additional discovery. (ECF No. 26). Therefore, the argument advanced in this motion is deemed subsumed by the second motion for summary judgment and will be considered as such. Defendant's motion for summary judgment here is **DENIED as moot**.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED in part**. Counts II and IV, Plaintiff's state law claims for retaliation and discrimination under Ohio Revised Code §4112.02, are **DISMISSED**. Count V, Plaintiff's state law claim for intentional infliction of emotional distress, is **DISMISSED, in part, without prejudice,** because the claim was improperly pleaded and as preempted by Title VII. Defendant's motion to dismiss Plaintiff's Title VII discrimination and retaliation claims is **DENIED**. Finally, Defendant's request for summary judgment is **DENIED as moot**.

**IT IS SO ORDERED**.

                                                __s/ Algenon L. Marbley__
                                                **ALGENON L. MARBLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**DATED: March 28, 2019**